## HAINES v. BANKERS' PETROLEUM & REFINING CO. (No. 7362.)

(Court of Civil Appeals of Texas. San Antonio. May 13, 1925. Rehearing Denied June 3, 1925.)

1. **Appeal and error** ⟨key⟩907(2)—When agreement of facts does not contain finding of fact necessary to support judgment, presumed that evidence supported judgment independently of agreement.

When the agreement of facts, which is filed, in lieu of a statement of facts, does not contain finding of fact necessary to support judgment, it will be presumed that evidence supported judgment independently of such agreement.

2. **Joint-stock companies and business trusts** ⟨key⟩1—Joint-stock association agreement held not to constitute pure trust.

Joint-stock association agreement *held* not to constitute pure trust, operated free from any management of the directors, but to constitute a common-law agreement, controlled by a board of directors.

3. **Joint-stock companies and business trusts** ⟨key⟩17—Petition of joint-stock association against officer and director, to recover money lost through his alleged fraud, held not subject to general demurrer.

Petition of joint-stock association against officer and director, who was also a stockholder, to recover money lost through his alleged fraud, *held* not subject to general demurrer.

4. **Joint-stock companies and business trusts** ⟨key⟩17—Member of board of directors of joint-stock association, and officer thereof, occupied fiduciary position of trust, agency, and confidence.

A member of board of directors of joint-stock association, and officer thereof, occupies fiduciary position of trust, agency, and confi-

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dence, and, where intrusted with management and control, must discharge his duties with the utmost care and good faith.

**5. Joint-stock companies and business trusts ⬦⟳17—Rule that action at law against partnership does not lie without previous accounting held not applicable in suit by joint-stock association against its director and officer, for his alleged fraud.**

Rule that action at law, by one partner against another, does not lie without previous accounting, *held* not applicable in suit by joint-stock association against its director and officer, to recover money lost through his fraudulent and tortious acts.

**6. Joint-stock companies and business trusts ⬦⟳17—Right of joint-stock association to sue its director and officer for torts and fraud held not dependent upon prior accounting and dissolution of association.**

Where a joint-stock association suffered pecuniary losses through the tortious acts and fraud of its director and officer, it was not necessary, as a condition to suing the director to recover such losses, that an accounting be first had and the association dissolved.

**7. Joint-stock companies and business trusts ⬦⟳17—Evidence held to show want of care and fraud of director and officer of joint-stock association resulted in damages to latter.**

Evidence *held* to show want of care and fraud of director and officer of joint-stock association resulting in damage to the association within Rev. St. 1911, art. 1985.

**8. Appeal and error ⬦⟳1026—Matters not hurtful will not be considered reversible.**

Matters not shown to be hurtful will not be considered reversible.

**9. Joint-stock companies and business trusts ⬦⟳17—Director and officer of joint-stock association held liable in damages to association, resulting proximately from his act or omission of duty, inconsistent with good faith.**

Director and officer of joint-stock association, to whom had been intrusted the management and control of association's financial affairs, *held* liable in damages to association resulting proximately from his acts or omissions, inconsistent with good faith.

**10. Joint-stock companies and business trusts ⬦⟳17—Duty of director and officer, intrusted with management of joint-stock association, to obey instructions of board of directors.**

It is the duty of a director and officer, intrusted with management of joint-stock association, to obey instructions of board of directors in regard to management and distribution of association property and collection of moneys due it.

**11. Joint-stock companies and business trusts ⬦⟳17—Director and officer of joint-stock association, guilty of fraud towards it, held not entitled to apportion or qualify his wrong.**

Director and officer of joint-stock association, who lost money for the association under such circumstances as made the loss a fraud on the association, *held* not entitled to apportion or qualify his wrong.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by the Bankers' Petroleum & Refining Company against L. B. Haines. Judgment for plaintiff, and defendant appeals. Affirmed.

John W. Wray, Max K. Mayer, and E. L. Gilbert, all of Fort Worth, for appellant.

Smith & Smith and Jonas Kizer, all of Fort Worth, for appellee.

COBBS, J. Appellee, a joint-stock association, sued appellant, a stockholder and officer therein, for the recovery of the sum of $3,301.85, being a balance due on the sale of certain refined and petroleum products made by him to the Associated Producing & Refining Company and never accounted for, and for the further sum, denominated "lease money," growing out of the leasing of a certain refinery alleged to have been sold by appellee to the Associated Producing & Refining Corporation, who, after the purchase, and while in the possession of the property, leased the refinery for the period of 4 months to the Texahoma Company. There was an acceleration clause in the transfer papers from appellee to said company, and the proposed lessee, Texahoma Company, refused to accept the lease unless appellee would agree that during the period of the lease to the Texahoma Company it would not take advantage of the acceleration clause to foreclose on the property. Appellant agreed thereto, and because of such agreement the $8,000 was lost to appellee through the fault and neglect of appellant.

The cause was tried with a jury upon special issues, and, in accordance with the answers thereto, judgment was rendered in favor of appellee against appellant for the sum of $11,301.85, with 6 per cent. interest from date of judgment.

[1, 2] Under an agreement of facts filed in lieu of a statement of facts, between the parties, we are not permitted to consider any question in the case not embraced therein. However, when there is any finding of fact necessary to support the judgment not in the agreement, we will presume there was testimony sufficient, independent of the agreement, to support the judgment. At the very outset we will say that this joint-stock association agreement does not constitute a pure trust, operated free from any management of the directors, but does constitute a common-law agreement, controlled by a board of directors. Sometimes such associations are called partnerships. See Cattle Raisers' Loan Co. et al. v. Sutton, 271 S. W. 233, an opinion by this court.

---

⬦⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3] We overrule appellant's first assignment of error, complaining that the court erred in not sustaining appellant's general demurrer. The petition stated a good cause of action.

We overrule the second assignment of error, complaining of the refusal of the court to instruct a verdict for appellant. In this the court did not err.

We overrule the third assignment of error, claiming that the trust agreement itself exempted the shareholders from personal liability as between themselves, because each shareholder of the organization and each member thereof so understood it, and was also charged with knowledge of the contents of the declaration of the trust which created the exemption, hence the court was without power, under such circumstances, to render any judgment against the appellant in the absence, first, of an accounting to show liability, and that therefore there was and is a complete defense against the cause of action, and by holding to the contrary it is contended the court committed error. This assignment seems somewhat involved and really "hoists appellant on its own petard," in that it says the trust agreement entirely exempts him from such a suit, then, in effect, says such a liability might be created by an accounting.

The fourth and fifth and all the assignments are practically to the same effect, grounding the defense upon the several grounds: (1) That there can be no suit against appellant to recover against him at all; (2) that there can be maintained no suit against him until after an accounting; and (3) that there can be no suit maintained against him at all upon a tort.

[4] From the beginning appellant occupied a fiduciary position of trust, agency, and confidence, as he was a member of the board of directors of the association, and at the same time was its secretary and treasurer, and on January 9, 1922, became its president and treasurer. He drew, by express authority of the board, and was paid, a salary of $300 per month, as secretary and treasurer. He paid himself out of the funds of the company without authority $200 per month, as president and treasurer. His drafts on the funds of that company during that period of time were without signature of any other member but himself.

By October 1, 1921, the company had amassed considerable assets, and at that time was the owner of a refinery in Wichita county, Tex., together with certain refined products consisting of gasoline, kerosene, and fuel oil. Also the owner of bills and accounts receivable, aggregating on their face $3,500, and a bank account of about $25,000.

The Associated Producing & Refining Corporation, organized under the laws of Delaware, never having a permit to do business in Texas, proposed, through appellant, to purchase from appellee its refinery, and appellee delegated appellant to make an investigation; whereupon thereafter appellant recommended the sale on the terms proposed, which were no cash but the promise to pay $135,000, to be evidenced by the notes of the said Associated Corporation to appellee, payable in installments of $12,000 each 6 months, all to be paid in 18 months, and to be secured by vendor's lien and deed of trust upon the refinery, and by pledge and delivery to the appellee $67,500 par value of the Associated Corporation's first mortgage, 8 per cent. gold bonds, and by the acceleration clause that, in the event of default in any payment when due, the whole indebtedness would, at the option of the holder of the note, mature.

All the matters in respect to the sale and collection of the money and management thereof were placed with, and left completely in the hands of, appellant to care for, for the benefit of appellee. He was to collect all moneys, notes, etc., and sell to the best advantage the refined products, and generally preserve the interests of the company.

Without the knowledge of appellee, or its consent, appellant became interested in the said Associated Corporation, and became a stockholder therein; and, while so interested, appellant delivered to the said Associated Corporation the refined products belonging to appellee, of the reasonable market value of not less than $5,301.85. Appellant drew a draft in the name of appellee, by himself as president, on the said Associated Corporation, at St. Louis, Mo., for $5,301.85, and deposited it as a cash item in the bank at Wichita Falls, Tex., with which bank appellee did business, and it was placed to the credit of appellee on the books of said bank. The draft was not paid but in due course dishonored. Appellant knew the facts, and at the meeting of January 9, 1922, was elevated from the position of secretary and treasurer to that of president and treasurer of Bankers' Petroleum & Refining Company; and he did not make known, as it was his duty to do, the dishonor of the draft, but approved at such meeting an audit of the company's affairs to December 31, 1921, showing cash on hand, inclusive of the $5,301.85; and falsity of the statement and audit was not made known to appellee until its meeting in April, 1923.

By January 9, 1922, appellant had become a large stockholder in the said Associated Corporation and a director and employee, and was familiar with, and had knowledge of, the affairs and financial standing of the said Associated Corporation. On that day the said Associated Corporation leased the refinery to the Texahoma Oil Company for the period of 4 months, for a rental of $8,000, payable in cash in advance. During the negotiations, the Texahoma Company discov-

ered the appellee's lien on the refinery and demanded, as a condition precedent, that appellee consent to the lease, which it refused to do, and instructed appellant not to consent thereto without the payment to him for the account of appellee to be applied on the note of the said Associated Corporation, the sum of $8,000 rental, which appellant agreed to do. Notwithstanding the instructions to the contrary, the appellant permitted the rental to be paid to the said Associated Corporation instead of to the appellee, and no part thereof has ever been paid to or received by appellee.

At the time of the lease, appellee held the advantage that only $4,000 had been paid on the note secured by a lien on the refinery and bonds which were then subject to foreclosure. By the exercise of reasonable care and diligence and effort the appellant was in a position to have collected for appellee, and applied on the note, the full rental of $8,000. Appellee, trusting appellant, did not discover the dereliction of appellant, and that the rental on the lease had not been paid prior to the meeting at Wichita Falls on April 9, 1923, and that the money was paid to the said Associated Corporation instead of to appellee. By reason of the neglect and want of care and attention to these matters, the appellee lost its debts, and the said Associated Corporation became a bankrupt. Appellant neglected and failed to call meetings of the board of directors, to give notice and make reports of his acts and doings in the matters intrusted to him, by reason of which misconduct, neglect, and want of care appellee lost its debt. The said Associated Corporation became hopelessly insolvent and unable to pay any of its indebtedness.

Special issues were submitted to the jury, and every issue of fact was found in favor of appellee.

[5, 6] It is true, as a general rule, that no suit can be maintained by one partner against another partner until the partnership is wound up, or until after an accounting has been had, but that rule is not applicable here. This is a suit by the company itself to compel the member who has committed tort —a wrong—to account for his mala fides. It is not necessary to primarily have either an accounting or a dissolution of the partnership before a suit can be brought on a tort such as this. The alleged agreement against personal suits, which attempts to relieve members from any judgment or recovery, has no application to the tortious acts and wrongs that members perpetrate upon the association itself. Just as well say, in a case of theft or embezzlement of the association's funds, the association is helpless to protect itself without first dissolving the corporation, which the members desire to continue in business. The demand here is specific and distinct, and ascertainable without any accounting.

This suit is not to be treated as one of contribution by one partner against another. He is not called upon to pay an indebtedness against a partnership, but is called upon alone to make good his tortious acts and fraud in which no other member participated. This was his wrong, and he alone can be called upon to rectify it, because it was his own misconduct and individual bad faith and fraud perpetrated upon his associates, to which no other was a participant or liable at all. No good result would be attained here in requiring appellee to file proceedings for an accounting or for a receivership to try issues undisputed that have already been tried. Victor Refining Co. v. Bank (Tex. Civ. App.) 263 S. W. 622.

A joint-stock association is now an institution quite as well known and understood in the business world as a partnership, concerning liability of its members to third parties or in respect to their mutual rights, duties, and liabilities to each other. The reason of the rule that an action of law by a partnership against one of its members will not lie without a previous accounting among its members does not exist in this case. Worley v. Smith, 26 Tex. Civ. App. 270, 63 S. W. 903; 20 R. C. L. 1076, 1078.

Even in a partnership matter one partner may maintain his action against his partners for damages arising from an injury caused to the business by the dishonest practice of a copartner, resulting from his gross negligence, unskillfulness, fraud, or wanton misconduct.

[7] There was evidence to show, and it was in the jurisdiction of the court to find from the evidence before it, and as the court has done, that the negligence, want of care, and fraud on the part of appellant (also found by the jury) resulted in the damage to appellee in the amount of the judgment. The testimony is very full that the loss occurred by reason of the negligence, want of care, and fraud of appellant. Article 1985, R. C. S. 1911.

[8] In regard to the charges of the court, we think all the issues were fairly submitted and covered the case. If any matters were immaterial and irrelevant, they have not been shown to be hurtful, and will not be considered as reversible error. Appellant did not object to the failure of the court to submit additional issues, and no specific material issues were requested by appellant and refused.

[9-11] Under this trust agreement the management and control of the company's affairs were placed in the hands of seven directors, but, by the action of the board of directors themselves, the possession and control of its financial affairs were placed under the management and sole control of ap-

pellant, one of its members, who was at different times the secretary, treasurer, and president. He owed to the directors and his company, in such agency and trust capacity, the utmost care and good faith. Therefore, as a proximate result of any act or omission on the part of appellant, inconsistent with good faith, causing appellee to be damaged, he is answerable in damages therefor. It was his duty to obey the instructions given him in regard to the management and disposition of the property and collection of the moneys due the appellee. Instead of that he dealt with the said Associated Corporation, and failed to collect the moneys from it, and became a stockholder and officer in that company antagonistic to the interest of appellee, and lost all the money it owed appellee, under such circumstances as made it a fraud upon the part of appellant. He cannot be heard to apportion or qualify his wrong.

We have carefully considered appellant's brief, all assignments of error and propositions, and find no reversible error assigned.

The judgment of the trial court is affirmed.